UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANTHONY JOHN GREER, JR. | § | |
| | § | |
| v. | § | CIVIL NO. 4:25-CV-1052-SDJ |
| | § | |
| CITY OF CARROLLTON, ET AL. | § | |

**MEMORANDUM ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of United States Magistrate Judge ("Report"), (Dkt. #84), this matter having been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. The Report was entered on August 10, 2026, containing proposed findings of fact and a recommendation that three motions to dismiss made by Defendants be granted. (Dkt. #14, #29, #42). Plaintiff Anthony John Greer, Jr. timely filed an objection to the Report, (Dkt. #85), as did Defendants United Musculoskeletal Partners, LLC, OrthoTexas Physicians and Surgeons, PLLC ("OrthoTexas"), and Cindy Murray (collectively, "UMP Defendants"), (Dkt. #86).

The Court has conducted a de novo review of the objections and the portions of the Report to which Greer and UMP Defendants specifically object, and the Court is of the opinion that the findings and conclusions of the Magistrate Judge are largely correct and that the objections are without merit as to the ultimate findings of the Magistrate Judge. The Court does, however, modify and expand on the Report's findings and conclusions as to Greer's objections.[1] Except as otherwise noted below,

[1] The Court finds that UMP Defendants' Objections, (Dkt. #86), are without merit and therefore will be overruled.

the Court hereby adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

## I. Background

Greer, proceeding pro se, alleges twenty-one counts encompassing various civil rights, tort, and contract claims against Defendants. (Dkt. #1). As relevant to the Court's review of the Report and Greer's objections, Greer discovered an overpayment following a medical procedure his wife had with OrthoTexas. (Dkt. #1 at 4). OrthoTexas first agreed to refund Greer by check, which he could pick up at their facility. (Dkt. #1 at 4). At the time, OrthoTexas had a masking requirement for all those entering their facility. (Dkt. #1 at 4). Greer informed OrthoTexas that he had a disability that prevented him from wearing a mask, and OrthoTexas subsequently agreed to refund the overage to his original payment method. (Dkt. #1 at 4).

At some point during Greer's communications with OrthoTexas, he became irate and harassed the staff at OrthoTexas by repeatedly calling them. (Dkt. #42-1 at 1). Defendant Cindy Murray, an employee of OrthoTexas, alleged that Greer was unsatisfied with the method of refund. (Dkt. #42-1 at 1). She stated that Greer used vulgar language over the phone and made calls to OrthoTexas that Murray and other staff felt were "alarming and abusive." (Dkt. #42-1 at 1). According to Murray, Greer called OrthoTexas fourteen times in one afternoon on September 22, 2021, and made an additional four calls on the afternoon of September 23. (Dkt. #42-1 at 1). Murray reported this behavior to Defendant Officer Nicholas Berry. (Dkt. #42-1 at 1).

Also on September 22, Greer called the Carrollton Police Department and requested a call back. (Dkt. #1 at 4). Officer Berry phoned Greer and informed him that he expected to issue Greer a trespass citation; Greer admits to "raising his voice," "yelling," and "us[ing] profanities" while speaking with Officer Berry. (Dkt. #1 at 4). Greer alleges that Officer Berry surreptitiously patched Murray into this call and "failed to activate his body camera until [Greer] began yelling, creating a misleading portrayal of the interaction." (Dkt. #1 at 4).

On September 24, 2021, Defendant Officer N. Willingham executed an Affidavit for Arrest Warrant or Capias ("Affidavit") based on reports from Officer Berry. (Dkt. #42-1). On that same day, a Warrant of Arrest and Detention was issued for Greer for criminal harassment pursuant to TEX. PENAL CODE § 42.07, signed by a Magistrate, in and for Denton County, Texas. (Dkt. #42-1 at 3).

Greer was not arrested pursuant to this warrant until June 11, 2022.[2] (Dkt. #1 at 6). After his arrest, Denton County filed a criminal complaint against Greer, charging him with the harassment of Murray. (Dkt. #14-3). The charge was ultimately dismissed after Denton County moved for dismissal. (Dkt. #14-1).

Based on these facts, Greer alleges in Count 1 a claim for malicious prosecution pursuant to 42 U.S.C. § 1983, arguing "Defendants" initiated his prosecution without

[2] Greer was arrested after McKinney Police were called to the scene of a disturbance between a pedestrian and a motorist. (Dkt. #12 at 5) (citing Dkt. #12-3 at 4). When police arrived, they found Greer and a pedestrian arguing about whether Greer was driving too fast in a residential neighborhood. (Dkt. #12 at 5) (citing Dkt. #12-3 at 4). McKinney Police discovered there was an active warrant for Greer's arrest and arrested him. (Dkt. #12 at 5) (citing Dkt. #12-3 at 4).

probable cause. (Dkt. #1 at 8).[3] The Report recommended that Count 1 be dismissed because the independent intermediary doctrine precluded Greer's claims. (Dkt. #84 at 15–16). Greer filed a timely objection. (Dkt. #85).

## II. LEGAL STANDARD

A district court reviews the findings and conclusions of a magistrate judge de novo only if a party objects within fourteen days after being served with the report and recommendation. FED. R. CIV. P. 72(b)(2)–(3). To challenge a magistrate judge's report, a party must specifically identify those findings to which it objects. "Frivolous, conclusive or general objections need not be considered by the district court." *Nettles v. Wainright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982*), overruled on other grounds by Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996). "And objections that simply rehash or mirror the underlying claims addressed in the report are not sufficient to entitle the party to de novo review." *Thompson v. Pruett*, No. 4:21-CV-371-SDJ, 2022 WL 989461, at *1 (E.D. Tex. Mar. 31, 2022).

## III. DISCUSSION

The Report recommended that Greer's malicious prosecution claim be dismissed because it is precluded by the independent intermediary doctrine. (Dkt. #84 at 15–16). That doctrine, as explained in the Report, insulates a state actor from making probable cause mistakes "if facts supporting an arrest are placed before

[3] Greer alleges two other counts relevant to these facts. Count 4 alleges a *Franks* violation against Officer Willingham for including material falsehoods or omitting critical facts in the Affidavit. (Dkt. #1 at 9–10). Count 14 alleges prosecutorial misconduct against Defendant Denton County. The Report recommended that Counts 4 and 14 be dismissed as time barred. (Dkt. #84 at 13, 14). The Court agrees with the Report's recommendation and thus does not address the dismissal of these counts.

an independent intermediary such as a magistrate" because "the intermediary's decision breaks the chain of causation." *Trevino v. Iden*, 79 F.4th 524, 531 (5th Cir. 2023) (quoting *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022)); *see also id.* at 531 n.4 (citing *Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004)) (explaining independent intermediary doctrine applies to claims other than false arrest, including malicious prosecution).

Greer argues that the Magistrate Judge failed to conduct a corrected affidavit analysis pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). (Dkt. #85 at 1-3). *Franks* "held an officer violates the Fourth Amendment if he deliberately or recklessly provides false information necessary to secure an arrest warrant." *Laviage v. Fite*, 47 F.4th 402, 406 (5th Cir. 2022) (citing *Franks*, 438 U.S. at 171). Greer argues that, had the Magistrate Judge employed a *Franks* violation analysis, the Report would have necessarily concluded that the independent intermediary doctrine cannot shield Defendants because the corrected affidavit would not have supported probable cause. (Dkt. #85 at 1–3). The Court disagrees that a *Franks* violation analysis would have altered the outcome on Greer's malicious prosecution claim and therefore adopts the recommendation of the Magistrate Judge.

**A. Relevant Law on Malicious Prosecution**

A malicious prosecution claim brought pursuant to Section 1983 requires that the plaintiff show:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide

> termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.

*Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (quoting *Gordy v. Burns*, 294 F.3d 722, 727 (5th Cir. 2002), *abrogated by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)).

"[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (quoting *Thompson v. Clark*, 596 U.S. 36, 43, 142 S.Ct. 1332, 212 L.Ed.2d 382 (2022)). Thus, a claim for malicious prosecution "turn[s] on whether a reasonable officer would believe the suspect had committed a crime." *Id.* (citing *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021)).

As explained above, the independent intermediary doctrine shields state actors who rely on a "warrant secured from a judicial officer" even where probable cause supporting the warrant is imperfect. *Villarreal v. City of Laredo*, 94 F.4th 374, 393 (5th Cir. 2024) (en banc) (citing *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988)). The doctrine's function is to "ensure[] that officers can make reasonable probable cause mistakes." *Hughes*, 100 F.4th at 619 (citing *Villarreal*, 94 F.4th at 393).

But *Franks* is an exception to the independent intermediary doctrine. *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (citations omitted). To prevail on a *Franks* claim, "plaintiffs must show that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of

probable cause." *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021) (per curiam) (citing *United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020) and *Franks*, 438 U.S. at 155–56). On the third element, *Franks* requires courts to conduct a "corrected affidavit" analysis, in which they "consider whether the warrant affidavit would support probable cause if the misstatements and material omissions were eliminated." *Hughes*, 100 F.4th at 620 (citing *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018)). However, to survive a motion to dismiss, the plaintiff must "point out specifically the portion of the warrant affidavit that is claimed to be false . . . accompanied by a statement of supporting reasons." *Thompson v. McGehee*, 183 F.4th 353, 368 (5th Cir. 2026) (quoting *Hughes*, 100 F.4th at 620).

**B. Greer's Pleadings**

Defendants argue that Greer's claim for malicious prosecution should be dismissed for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. #14 at 11–14); (Dkt. #42 at 18–20). Accordingly, the Court examines whether Greer's claim for malicious prosecution plausibly asserts a *Franks* violation.

**i. Legal Standard for Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court has instructed that plausibility means "more than a sheer possibility," but not necessarily a probability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

When assessing a motion to dismiss under Rule 12(b)(6), courts accept "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Legal conclusions that lack factual support are not entitled to the same presumption. *Iqbal*, 556 U.S. at 678.

The Court considers all "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). *See also Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (explaining that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"). Also, documents attached to a rule 12(b)(6) that "are referred to in the plaintiff's complaint and are central to [his] claim[s]" are properly before a court. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted) (confirming that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim"). If the plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint or by facts disclosed by a document attached to the motion to dismiss that is central to the claim

and referenced by the complaint, then the plaintiff's contradicted allegations are not accepted as true. *Carter v. Target Corp.*, 541 F.App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss).

To determine whether the plaintiff has pleaded enough to "nudge[] his claims . . . across the line from conceivable to plausible," a court draws on its own "judicial experience and common sense." *Id.* at 679–80 (brackets omitted) (quoting *Twombly*, 550 U.S. at 570). This threshold is surpassed when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. As relevant here, Greer's complaint must specifically point out where the Affidavit is false or contains material omissions. *Thompson*, 183 F.4th at 368.

**ii. Greer's Specific Allegations in the Complaint**

Greer's claim for malicious prosecution states in Count 1 that "Defendants, acting under color of state law, caused a criminal prosecution without probable cause in violation of Plaintiff's Fourth and Fourteenth Amendment rights." (Dkt. #1 at 8). This statement is a conclusory allegation that does not point out any falsehoods or omissions necessary to plausibly assert a *Franks* violation.

However, the Court must construe pro se filings liberally, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed. 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct.

285, 50 L.Ed.2d 251 (1976)). Accordingly, the Court will look to the remainder of the complaint to ascertain whether Greer states a plausible *Franks* violation.

Elsewhere in the complaint, Count 4 specifically alleges a "*Franks* violation."[4] (Dkt. #1 at 9–10). Therein, Greer states:

> Defendant Officer N. Willingham submitted an affidavit in support of an arrest warrant that included material falsehoods or omitted critical facts. The affidavit alleged repeated vulgar phone calls without identifying the source of the calls, verifying their content, or noting the complainant's potential bias. It omitted that no voice authentication was performed and failed to reference available documentation showing Plaintiff's prior efforts at peaceful accommodation.
>
> These misrepresentations were essential to the probable cause determination and led directly to Plaintiff's arrest and prosecution.
>
> Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), Plaintiff asserts that but for these intentional or reckless misstatements and omissions, no warrant would have issued. Therefore, Plaintiff's Fourth Amendment rights were violated.

(Dkt. #1 at 9–10). Greer further states in the factual background section of his complaint that "Officer Berry failed to activate his body camera until Plaintiff began yelling, creating a misleading portrayal of the interaction." (Dkt. #1 at 4 ¶ 7). He then states, "Officer N. Willingham (Badge #933) filed an arrest warrant affidavit on September 24, 2022, without reviewing or personally verifying the evidence, relying solely on hearsay and the word of another officer. No phone calls submitted as evidence demonstrated any vulgar or threatening language aside from the exchange with Officer Berry." (Dkt. #1 at 5 ¶ 12).

[4] Although Count 4 will be dismissed as time barred, *see supra* n.3, the Court considers its factual allegations here in the interest of reading Greer's complaint liberally.

Construing the complaint liberally, Greer alleges one specific falsehood: that in his calls with OrthoTexas, he used no vulgar or threating language. (Dkt. #1 at 5 ¶ 12). He also alleges several omissions: (1) "The [A]ffidavit alleged repeated vulgar phone calls without identifying the source of the calls"; (2) the Affidavit did not "verify[] the[] content" of the calls or "review[] or personally verify[] the evidence"; (3) the Affidavit failed to "note[] the complainant's potential bias"; (4) the Affidavit failed to note that the officers did not perform a "voice authentication" of the calls; (5) the Affidavit "failed to reference available documentation showing Plaintiff's prior efforts at peaceful accommodation"; and (6) the Affidavit omits that "Officer Berry failed to activate his body camera until Plaintiff began yelling." (Dkt. #1 at 4–5, 9). Thus, when construed liberally, Greer's complaint points out one falsehood and six omissions to be considered in the corrected affidavit.

**iii. Corrected Affidavit Analysis**

Turning to a corrected affidavit analysis, the Court determines whether the falsehoods, if removed from the Affidavit, and the omissions, if added to the Affidavit, "would have vitiated probable cause." *Melancon v. Walsh*, No. 24-30232, 2025 WL 429977, at *4 (5th Cir. Feb. 7, 2025) (per curiam) (unpublished). Taking Greer's alleged falsehood and each of his omissions in turn, the Court concludes that Greer fails to state a *Franks* violation because the corrected affidavit still sufficiently establishes probable cause.

"[P]robable cause means a 'fair probability' that the defendant committed the crime, which requires more than a 'bare suspicion' but less than a preponderance of

the evidence." *Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023) (brackets omitted) (quoting *United States v. Watson*, 273 F.3d 599, 602–03 (5th Cir. 2001)). To determine if probable cause exists, courts "must look to the totality of the circumstances and decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer demonstrate a probability or substantial chance of criminal activity." *Terwilliger*, 4 F.4th at 282 (quotation marks omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 56–57, 138 S.Ct.577, 199 L.Ed.2d 453 (2018)).

Relying on Officer Willingham's Affidavit, a judge found probable cause to arrest Greer for criminal harassment pursuant to TEX. PENAL CODE § 42.07(a)(7). (Dkt. #42-1). According to that statute, a person commits the offense of harassment "if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX. PENAL CODE § 42.07(a)(7). Additionally, Section 42.07(b)(1-a)(A) defines "[e]lectronic communication" as including "a communication initiated through the use of . . . a cellular or other type of telephone."

Specifically, the Affidavit stated:

> On Wednesday, September 23, 2021, at approximately 1618 hours, Officer Berry #936 received a call from Cindy Murray in reference to Harassment that was taking place at the Ortho Texas . . . . [Murray] who is the Office Manager at the location, advised that they had a patient at their location by the name of Allison Greer, [Murray] explained that she, along with other office personnel, had been receiving alarming calls from Allison's husband, who was identified as Anthony Greer Jr. (w/m 09-12-91).

> [Murray] proceeded to tell Berry that [Greer] had become irate over an overpayment he had made on [his wife] Allison's account. [Murray] told Berry that [Greer] (and Allison) were due approximately a $500 refund on money they overpaid for Allison's hip surgery. [Murray] originally informed [Greer] that she would issue him the check the week of September 27–October 1, but [Greer] was not satisfied with that resolution. [Murray] offered [Greer] another option of returning the $500 to his American Express card, but [Greer] was not satisfied with that either. In turn, [Greer] began making calls to the staff at the location that they all felt alarming. During those calls, [Greer] used vulgar language and expletives that the staff found alarming and abusive. Those calls were on recorded lines. On September 22, [Greer] made a total of fourteen calls between the hours of 1230 and 1704. During those calls, [Murray] explained that [Greer] was yelling belligerently "Fuck you" and telling the staff members that they were idiots. The events of the 22nd prompted [Murray] to have Berry issue [Greer] a Criminal Trespass Warning. The Criminal Trespass Warning was issued by Berry and captured on his in-car camera. During that call, Berry witnessed the same behavior that [Murray] had previously described.
>
> On September 23, 2021, [Greer] made an additional four calls between 1259 and 1542 hours. These calls were of the same nature. [Greer] was still yelling belligerently and further said that he was going to show up at the location on Friday despite being criminally trespassed. He further state[d] that "there's not a fucking thing you can do about it."
>
> Anthony Greer committed the offense of Harassment by intentionally sending repeated electronic communication in a manner that was likely to alarm, harass, annoy, alarm, abuse, torment, embarrass, and offend others, a violation of Texas Penal Code 42.07(a)(7).
>
> Texas Penal Code 42.07(b)(1)(a) defines a cellular or other type of telephone device as electronic communication.

(Dkt. 42-1 at 1).

The Court now turns to each of Greer's alleged falsehoods and omissions. As for the single falsehood, Greer asserts that the Affidavit's characterization of him using vulgarity or threating language in his call with Murray and others at OrthoTexas is false. (Dkt. #1 at 5 ¶ 12). Even assuming this were true, TEX.

PENAL CODE § 42.07(a)(7) does not require the use of vulgarity or threating language; it requires "repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Eliminating the references to vulgarity and threating language in the Affidavit does nothing to change the fact that he made numerous phone calls to OrthoTexas in two afternoons, and that staff "felt those calls were alarming." Moreover, Officer Berry also personally witnessed Greer's behavior when he called him to issue the trespass warning—facts Greer admits. The Affidavit states when Officer Berry called Greer to issue the criminal trespass warning, "Berry witnessed the same behavior that [Murray] had previously described." (Dkt. #42-1 at 1). Further, Greer admits that on that phone call he "raise[d] his voice and use[d] profanities . . . towards Officer Berry." (Dkt. #1 at 4 ¶¶ 7–8). This independent evidence tends to corroborate the fact that Greer likely made calls that were at least abusive, even if he did not use vulgar or threatening language. This alleged falsehood does not alter the Court's probable cause determination.

As for the omissions, Greer first alleges, "[t]he affidavit alleged repeated vulgar phone calls without identifying the source of the calls." (Dkt. #1 at 9). But the Affidavit identifies Greer as the source of fourteen calls on the afternoon of September 22 and another four calls on the afternoon of September 23. (Dkt. 42-1 at 1). It also alleges those calls were made on a recorded line. (Dkt. 42-1 at 1). Thus, the Affidavit directly contradicts Greer's

allegation that it does "not identify the source of the calls." This omission has no effect on probable cause.

Greer's objection perhaps provides more context to this alleged omission. He stated, "calls traveled both directions." (Dkt. #85 at 2). Indeed, in the complaint, Greer alleges "recordings reveal numerous calls initiated not only by Plaintiff but also by Ortho of Texas, establishing two-way communication." (Dkt. #1 at 5 ¶ 14). It is unclear whether Greer means that, of the eighteen total calls, some were initiated by OrthoTexas employees, or that they initiated additional calls. Either way, even if the Affidavit stated that OrthoTexas had initiated a few of the calls, it does not negate underlying probable cause for the Affidavit, which states that Greer made numerous harassing, "abusive," and "alarming" calls to OrthoTexas.

Second, Greer alleges the Affidavit did not "verify[] the[] content" of the calls or "review[] or personally verify[] the evidence." (Dkt. #1 at 5 ¶ 12, 9). Even if this were true, the Affidavit's assertion that the calls were "vulgar," "alarming," and "abusive" is supported by probable cause because Officer Berry spoke directly with Murray about the calls. Officer Willingham could have reasonably relied on Officer Berry's account of Murray's statements to conclude the calls violated Texas harassment law. Officer Berry also personally witnessed Greer's behavior when he called him to issue the trespass warning—facts Greer admits. The Affidavit states that when Officer Berry called Greer to issue the criminal trespass warning, "Berry witnessed the same behavior

that [Murray] had previously described." (Dkt. #42-1 at 1). Further, Greer admits that on that phone call he "raise[d] his voice and use[d] profanities . . . towards Officer Berry." (Dkt. #1 at 4 ¶¶ 7–8). Here too, the omission does not affect probable cause.

Third, Greer claims the Affidavit failed to "note[] the complainant's potential bias." The Affidavit makes clear that Murray was the source of much of the information concerning the number and content of Greer's calls. Thus, to the extent a recipient of Greer's calls to OrthoTexas could have "potential bias," this would have been self-evident to any judge considering whether to issue an arrest warrant. Regardless, the Affidavit indicates that Greer's own conduct corroborated Murray's statements. As explained above, and as Greer admits, he raised his voice and used vulgarity on his phone call with Officer Berry. Therefore, this omission does not impact probable cause.

Fourth, Greer alleges the Affidavit failed to note the officers did not perform a "voice authentication" of the calls. It is unclear what a voice authentication would have achieved. Greer does not dispute that he spoke with OrthoTexas employees over the phone numerous times; he only disputes the precise number of calls and that he used vulgar language. (Dkt. #1 at 6–7); (Dkt. #85 at 2). Thus, the failure to perform a "voice authentication" has no bearing on probable cause.

Fifth, Greer contends the Affidavit "failed to reference available documentation showing Plaintiff's prior efforts at peaceful accommodation."

(Dkt. #1 at 9). Greer does not explain what he means by "available documentation," nor does he describe the nature of his purported "efforts at peaceful accommodation," or whether any such information was available to Officer Willingham at the time the Affidavit was executed. But even if Greer had explained what he meant by "prior efforts at peaceful accommodation," it would not negate the fact that he later made the harassing calls. Thus, this vague allegation fails to alter the probable cause analysis.

Sixth, Greer alleges the Affidavit omits that "Officer Berry failed to activate his body camera until Plaintiff began yelling." (Dkt. #1 at 4 ¶ 7). Across Greer's filings he consistently takes aim at this allegedly omitted body camera footage. The Affidavit states that Officer Berry "captured on his in-car camera" his phone call to Greer to issue the criminal trespass warning. (Dkt. #42-1 at 1). The Court presumes that this is what Greer means by "body camera footage."

Greer alleges that this footage purposefully omits the first full minute and begins with the portion where he admits to having "raise[d] his voice and use[d] profanities." *See* (Dkt. #1 at 4 ¶ 7); (Dkt. #47 at 1, 4–7, 10–14, 16–17, 19). However, in all of Greer's arguments about this allegedly missing minute, he never alleges what he believes was actually said; he only vaguely asserts that it was "exculpatory." *See* (Dkt. #47 at 10); *see generally* (Dkt. #47).

Regardless, the Affidavit does not rely on the recording itself; it merely notes that Officer Berry recorded it on his vehicle's recording device. Rather, a

combination of Murray's statements and Officer Berry's statements about his personal interaction with Greer supports probable cause. Even assuming the recording omits the first minute of the call, that omission would have no bearing on the probable cause supporting the Affidavit. After all, Greer admits to "raising his voice," "yelling," and "us[ing] profanities" while speaking with Officer Berry. (Dkt. #1 at 4).

Having considered each of Greer's alleged falsehoods and omissions, the Court concludes that Greer's malicious prosecution claim fails to state a *Franks* violation because the corrected affidavit still sufficiently establishes probable cause.

**C. Dismissal with Prejudice**

The Magistrate Judge recommended that Greer's malicious prosecution claim be dismissed with prejudice. (Dkt. #84 at 16). Having concluded that Greer's malicious prosecution claim fails to state a *Franks* violation, the Court must next determine whether to dismiss Greer's claim with prejudice.

"Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (citing *Moawad v. Childs*, 673 F.2d 850, 851–52 (5th Cir. 1982)). A court may nonetheless dismiss the claim with prejudice if the plaintiff has already pleaded his "best case." *Id.* (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986)). A plaintiff pleads his best case if he has been "'apprised of the insufficiency' of the complaint,"

*Dark v. Potter*, 293 F.App'x 254, 257 (5th Cir. 2008) (per curiam) (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 246 (5th Cir.1985)), or when the plaintiff's "extensive response to the motion had provided him ample opportunity to state his best case." *Id.* (citing *Jacquez*, 801 F.2d at 792). Further, a "court need not grant a futile motion to amend." *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)).

Here, various coalitions of Defendants filed three motions to dismiss. (Dkt. #14, #29, #42). Greer filed responses to each of them. (Dkt. #17, #47, #49). He has further filed an objection to the Report. (Dkt. #85). In each of those four filings, Greer confronts reasons for the insufficiency of his malicious prosecution claim and offers rebuttal arguments on the *Franks* violation issue. Accordingly, the Court finds that Greer has been apprised of the insufficiencies of his complaint.

His four filings also sometimes present new arguments, not present in the complaint, on the *Franks* violation issue. For the reasons stated below, those arguments also fail to alter the Court's assessment. Accordingly, the Court finds Greer has stated his best case and, based on that best case, amendment to his complaint would be futile.

The Court assesses each of the four filings in turn.

**i. Response to Denton County's Motion to Dismiss**

In his response to Defendant Denton County's Motion to Dismiss, Greer addresses Denton County's arguments on the independent intermediary doctrine. (Dkt. #17 at 2–3). Citing *Franks*, he argues "Plaintiff specifically alleged that the

arrest affidavit omitted exculpatory facts, misrepresented communications, and relied on a complainant's false statements that were uncorroborated." (Dkt. #17 at 2). This statement does not specify any material falsehoods or critical omissions and therefore does not state a claim for a *Franks* violation. *Thompson*, 183 F.4th at 368.

**ii. City Defendants' Motion to Dismiss**

In his Response to the City Defendants' Motion to Dismiss, Greer advances six numbered omissions that also fail.[5] (Dkt. #47 at 11–12). In his first identified omission, Greer alleges that "Officer Berry—not Plaintiff initiated the call. This directly contradicts Defendants' narrative and is critical to probable cause." (Dkt. #47 at 12). Again, the Court presumes Greer means Officer Berry's call to Greer to issue him a criminal trespass warning. The Affidavit states, "[t]he events of the 22nd prompted [Murray] to have Berry issue [Greer] a Criminal Trespass Warning." (Dkt. #42-1 at 1). The language of the Affidavit implies that Officer Berry is the one who initiated the call.[6] Even so, the fact that Officer Berry initiated the call to Greer to issue him a criminal trespass warning in no way affects the probable cause supporting the Affidavit.

The Court next considers numbered omissions two and six as they are related. In number two, Greer alleges that the Affidavit omits that "Cindy Murray was already patched into the call before calling the Plaintiff. The concealed witness

[5] Greer's third numbered omission concerns the omissions of the first minute of the call with Officer Berry. Having already concluded this omission fails, *see supra* Section III.B.iii, the Court does not reexamine it here.

[6] The Court also notes that Greer alleges in his complaint that he "contacted the Carrollton Police Department and requested a callback concerning threats of false arrest" and that in response he "was later contacted by Officer Nicholas Berry." (Dkt. #1 at 4 ¶ 6).

undermines credibility and shows coordinated misconduct." (Dkt. #47 at 12). Number six alleges that the Affidavit omits "the conspiratorial actions between Berry and Murray. These were key acts that would have alerted a magistrate that the allegations were retaliatory and fabricated."[7] (Dkt. #47 at 12). Greer essentially argues that these facts are evidence of a civil conspiracy to falsely arrest Greer and that, had the judge known, she would not have issued the arrest warrant.

The Affidavit makes no secret that Officer Berry and Murray were communicating. *See, e.g.*, (Dkt. #42-1 at 1) ("[Murray] proceeded to tell Berry that [Greer] had become irate . . . ."). Indeed, as the Court has already explained, Murray's statements to Officer Berry are the primary source of probable cause for the Affidavit. Further, Greer does not explain why Murray's alleged presence on the call, surreptitiously or not, would alter the probable cause supporting the Affidavit. Even if the Affidavit included a statement that Murray was present on the call, it would not alter the fact that Greer made numerous harassing phone calls to Murray and others at OrthoTexas. Thus, these points also fail to alter the Court's assessment on the corrected affidavit's support of probable cause.

In his fourth argument, Greer asserts the Affidavit omits that "Plaintiff was at home during the call. Issuing a trespass warning while Plaintiff was not present on the property is legally baseless." (Dkt. #47 at 12). But a trespass warning to someone at home pursuant to TEX. PENAL CODE § 42.07(a)(7) is not legally baseless. That

[7] The Court notes that the portrayal of Murray and Officer Berry's communication as "conspiratorial actions" is a legal conclusion and thus not strictly an omission of fact to be considered in the corrected affidavit.

statute criminalizes harassment through "electronic communications," which includes a communication initiated through the use of . . . a cellular or other type of telephone." *Id.* § 42.07(a)(7), (b)(1-a)(A). Clearly, one can initiate a harassing communication via a phone while at home, thus violating the statute. Accordingly, this omission has no bearing on probable cause because it is legally false.

Greer's fifth point alleges the Affidavit omits "Plaintiff's ADA disability and his explanation. This is essential context showing Plaintiff was not refusing to comply—he physically could not." (Dkt. #47 at 12). The inclusion of this omitted information would, as Greer says, provide context. However, it would do only that. The fact that Greer was upset about the alleged treatment of his ADA disability does not negate the numerous abusive calls he made to OrthoTexas—it only explains why he made those abusive calls. Thus, this argument also does not negate probable cause.

**iii. Response to UMP Defendants' Motion to Dismiss**

In his Response to UMP Defendants' Motion to Dismiss, Greer mentions *Franks* but identifies no new falsehoods or omissions. (Dkt. #49 at 7–8). He again raises issues with the missing first minute of Officer Berry's recording and the omission of Murray's presence on that call. (Dkt. #49 at 7–8). As the Court has already discussed, these points are insufficient to alter the probable cause analysis. Thus, Greer's Response to UMP Defendants' Motion to Dismiss also does not alter the Court's conclusion on the dismissal of Greer's malicious prosecution claim.

**iv. Objection to the Report**

In Greer's Objection to the Report, he proposes a corrected affidavit as follows:

> [1] Greer and OrthoTexas/Cindy Murray were engaged in an ongoing dispute concerning an overpayment, the manner of refund, medical access, and Greer's asserted ADA rights. [2] Communications were going back and forth. [3] Plaintiff alleges the later-produced recordings do not contain repeated obscene or vulgar communications to Murray and that the strongest offensive term in the recorded business calls was "heck." Murray reported that Greer was repeatedly calling and using vulgar language. Berry then called Greer on September 23, 2021 at about 16:18 hours, identified himself as an officer, and Greer became irate, screamed, and used vulgar language while criticizing Berry. [4] Plaintiff alleges Berry had not reviewed the underlying recorded calls before transmitting the harassment narrative that was later used in the warrant process.

(Dkt. #85 at 3).

Point one immaterially reframes the context for the dispute. It does not allege a specific falsehood or omission and thus does not impact probable cause. Further, the Affidavit already explained much of this context. (Dkt. #42-1 at 1) ("[Greer] had become irate over an overpayment . . . ."). Similarly, the Court has already addressed why mentioning Greer's ADA disability would not affect probable cause.

The Court previously addressed points two, three, and four. Greer could have violated TEX. PENAL CODE § 42.07 without using vulgarity. The fact that OrthoTexas may have initiated some calls to Greer does not affect the probable cause determination. Likewise, it was not necessary to review the records of the calls to make a probable cause determination.

* * * *

Based on the foregoing, the Court finds that Greer alleged five additional omissions in his responses to Defendants' motions to dismiss and his objection in addition to the one falsehood and six omissions raised in his complaint. He has alleged twelve total falsehoods and omissions across five filings that all fail to alter the probable cause assessment under a corrected affidavit analysis pursuant to *Franks*. Accordingly, the Court concludes that Greer has pleaded his best case and further amendment of his complaint would be futile. Greer's claim for malicious prosecution will therefore be dismissed with prejudice.

## IV. CONCLUSION

Based on the foregoing reasons, the Court concludes that the Objections to Report and Recommendation of United States Magistrate Judge, (Dkt. #85, #86), are **OVERRULED.** It is therefore **ORDERED** that (1) Defendant Denton County's Motion to Dismiss, (Dkt. #14); (2) Defendants United Musculoskeletal Partners, LLC, OrthoTexas Physicians and Surgeons, PLLC, and Cindy Murray's Motion to Dismiss under Rule 12(b)(6) and 12(b)(1), (Dkt. #29); and (3) Defendants City of Carrollton, Texas, Officer Nicholas Berry, and Officer N. Willingham's Motion to Dismiss Plaintiff's Complaint and Brief under Rule 12(b)(6) and 12(b)(1), (Dkt. #42), are each **GRANTED**, and that Plaintiff's case is **DISMISSED WITH PREJUDICE** as to Counts 1–4, 6–8, 10, 13–16, 18–21 and **DISMISSED WITHOUT PREJUDICE** as to Counts 5 & 9. Plaintiff may file an amended complaint within fourteen days with respect to the counts that have been dismissed without prejudice. If plaintiff fails to

file an amended complaint within that time, those counts will be dismissed with prejudice.

It is finally **ORDERED** that any relief not previously granted is **DENIED**.

**So ORDERED and SIGNED this 28th day of September, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE